The corporation in their answer insisted that it was their duty and interest to improve the navigation below the town of Fayetteville, as well as that above it; that with a view to this, they had purchased a number of negroes, who were placed upon the river below that place to remove obstructions; that this course was dictated by their experience of the fact that while laborers could not be employed to work in the low country, and it was universally known at the sale of the Haywood lots that this was a permanent investment for the improvement of the lower part of the river; that as to the navigation between Fayetteville and Haywood, the improvement of it required more skill than that below the former place, because in the latter sandbars alone were to be removed, whereas, in the former, canals were to be dug and locks built; that being entirely ignorant of the science of civil engineering, they had, just before the sale in September, 1818, after due caution, and as they thought, upon sufficient information, made a contract with one Stroud for the contemplated improvements between Fayetteville and Haywood; that at the sale it was distinctly announced by Stroud, who attended it, that there was no time specified in his contract within which it was to be completed, and that all its stipulations, together with the plans, etc., were fully disclosed; that the officers of the corporation honestly thought that they should be able to perfect the navigation, and participating in the common delusion, and thinking that the lots at Haywood were selling too low, they had stopped the sale. They admitted that the works (239) commenced by Stroud had failed, and finding the resources of the company much diminished, they had, in order to effect the greatest possible amount of improvement, confined themselves to working upon the river below Fayetteville; but that they intended to recommence above with more experience.
The answer of the other defendants it is not necessary to state, further than that they claimed under an assignment of the bonds by the corporation to them in payment of a debt.
Replications were put in to the answers, and proofs taken; the contract with Stroud was filed as an exhibit. It is not necessary to give a statement of the depositions, as they supported the answer on all material points. *Page 195 
The contract being executed, nothing is left for a court of equity to do in respect to it, provided the transaction is a fair one. If there was no fraud in making the sale and obtaining the bond, parol evidence is inadmissible for the purpose of annexing a condition to the written deed, which appears on its face to be absolute and unconditional. Any declarations made at the time of the sale by the vendor, relative to the property, if not incorporated in the written contract of sale, are presumed to have been abandoned by the parties, as forming no part of it. They are not to be proved by parol, to explain the contract, or in any way to affect it, except when it is alleged that they were false, and so known to be by the vendor at the time, and were spoken with a view to commit a fraud on the vendee. In looking into all the evidence in this case, I am unable to discover any declaration made by the agents of the company which were made with a fraudulent intent. The declaration made by the auctioneer at the sale in the hearing of the president of the company, and by the order of one of the directors, that the river would be made navigable by the company in a reasonable time thereafter, appear to me not to (240) have been made with any fraudulent intent to enhance the price of the lots. The large capital they had got subscribed, the contracts they had made with workmen to execute the work, the stop put to the sales of the lots by the company's agents the day the plaintiffs purchased, the large sums expended by the company in their endeavors to complete the navigation, and their continued efforts to effectuate the object to the present time, all these circumstances connected with the facts that the plaintiffs had full knowledge of the capital subscribed, the contracts entered into by Stroud and others to do the work, the plans and nature of the work to be done, all taken together repel the presumption that the agents of the company intended to commit a fraud at the time the sale of the lots was made. The company's agents were honestly mistaken in the declarations and in their expectations. It is a hard case for the plaintiffs, but that is no reason for this Court to interfere, much less to rescind this executed contract. I think this case is within the principles of the two cases cited by the counsel for the defendant. The first is the case of City of London v. Richmond, 2 Vern., 421. The city of London articled with a man by the name of Aldersen, to lay a new leaden pipe of 5 inches diameter for the carrying water to Cheapside and Stocksmarket, which it was affirmed would carry twenty tons of water each *Page 196 
hour; whilst this was doing, the city, by a committee, treated with Haughton to grant him a lease of the water, reserving a portion of the same water for the prisons and certain conduits, and he agreed to pay a rent of £ 750 per annum for fifteen years. It so fell out that the pipe would not discharge but six tons an hour; and instead of being a beneficial concern, it would not produce above £ 300 per annum. Haughton assigned the lease, became insolvent, and the rent was in arrear; the bill was filed for payment, and to carry the covenants in the lease into effect. The chancellor said, as a beneficial bargain will be (241) decreed in equity, so if it happen to be a losing bargain, for the same reason it ought to be decreed.
In Legge v. Croker, 1 Bull Beatty, 506, the Court determined that a lease deliberately executed could not be set aside on account of an unfounded, though justifiable, assertion of the lessor penning the treaty; there being no willful misrepresentation, nor on the grounds of mistake from an omission of a general warranty in the lease, such not constituting a part of the agreement. In this case, as the company have been honestly mistaken, and as there is no covenant inserted in the deed, or left out by mistake, and as there is no fraud, although it may be a hard bargain, we have no right to relieve against it. A failure in a speculation forms no ground to resist a specific performance. Adams v. Weare, 1 Bro. Ch. 569;Mortimer v. Cupper, ib., 156. I think the injunction should be dissolved.